What I really want to start with is the fact that we believe it was an abuse of discretion for the court to re-open the hearing absent two things, one, new evidence, or two, new legal issues, issues that may have come up in the hearing or maybe a change in the case absent those two things, the government should not have been allowed to re-open. This was a run-of-the-mill gun case. It was a gun case out of North St. Louis. It involved, in some ways, some pretty simple suppression issues. It was not complex. It did not involve lots of officers. It did not involve a long series of facts. The fact that it wasn't complicated at all. And also, this did not involve a case of first impression. And then during the hearing itself, there was nothing raised in the hearing that... What if there had been objections to the R&R and the district court had remanded citing a need for additional evidentiary hearing? We'd have the same situation. I think we'd have the exact same situation. What case with that scenario has reversed for the reason you argue? None, but at the same time, I think... I doubt that it's never happened. It may have happened, but I haven't found a case where the judge said, you know what, this has been too vague, that your officer who testified, there just wasn't enough information there for you even to make a decision. Usually what happens in case after case is either new evidence is discovered or a new legal issue is presented. Was this a new magistrate judge? It was a brand new magistrate judge. I believe she'd only been on the bench for several weeks at that time. But to talk about the facts of this case, the prosecutor, I know he's a relatively new U.S. attorney, but at the same time, I think he was a district attorney for many years prior to that. I believe he was assisted in the hearing by other prosecutors. And Ms. Barron, I know, was at the second hearing. I don't think she was involved in the first. But the government, as the court well knows, has a ton of resources. They have plenty of time to get ready for the case. They chose to call Officer Monterey. They chose not to call Officer Kegel, who was in court that day and sat out in the hallway during the testimony. Only after the report and recommendation came out did they then say, oh, we want to flesh out these issues more. So there's never been a reopening on the grounds that the ruling was a surprise? No court in any, no circuit has ever addressed that? I can't say that, no. But that's not in your list of two exclusive grounds. A surprise? A reasonably unanticipated ruling. But in this case, I think the court has to ask themselves. No, just let's stick with your exclusive list of two. Why wouldn't there be discretion to reopen on that basis? If there was a surprise in some of the testimony that was given? No, in the ruling. In the ruling. I never dreamed the judge would go that way. That happens. I mean, we file those every day. And what I mean by that is this, is we object constantly to the R&R. We object up to the district court. And in this case, the district court has that remedy to then look back at the magistrates. Yeah, but this would be, you would say, well, I've got evidence on that point. I did not anticipate that the judge would consider that a material or significant issue. I'd like to present testimony or evidence on what you've surprised me with. And the judge says, yeah, that point is well taken and grants your motion. By your standard, your exclusive list of two, that would be a per se abuse of discretion. And I don't think that works. I don't disagree necessarily. Okay, well, that's the trouble with your per se rule and most every per se rule, particularly on an issue where the governing standard is abuse of discretion. But if you look at the facts of this case, this wasn't anything unusual. I know, but you're telling us don't go fact specific, and I'm resisting that. Yes, you've also said on the facts, I mean, you've argued it both ways. I'm only questioning your per se rule. I'm not suggesting you don't have an argument on the facts. I understand. I guess another issue for the court to consider, and this is something obviously the circuit courts are much more concerned about than district courts, is, and this has been brought up in cases cited by the government, and the fact that maybe all relevant evidence should be in front of the trier of fact. But at the same time, it's rather frustrating for either side, and especially the defense, when the government gets a chance to fix their case. And I'm not alleging anything nefarious was done here by the government in this case, but the fact of the matter is Officer Cagle, when he testified at the second hearing, he went back and addressed each one of Matt Straitman's issues. The comparison of Cagle's testimony, the second officer, with the first officer is rather striking. What's striking is what happened regarding the seizure and then the general information. Officer Cagle testified for almost an hour, and let it granted that's directly across, about what happened over an interaction, an observation first that lasted 10 to 15 seconds that the government argues was possibly enough evidence. There was a different witness at the first hearing? There was. At the first hearing, it was Officer Monterano. Officer Monterano was the passenger in a police vehicle. The police vehicle was unmarked. It was a Grand Prix, American-made vehicle, with tinted windows. They were in plain clothes, but they did wear a vest. They wore some sort of identification that said police across the front and a lanyard with a badge on it. So Officer Monterano is sitting with Officer Cagle. Officer Cagle and Officer Monterano are, I don't know if they're partners. On that day, at least, they were partners. They were together. The officer that they called at the second hearing wasn't, say, observing this from a different angle or had longer time to observe it. In fact, the person who had the most sort of clear picture of the entire incident was the officer that testified at the first hearing, which is Monterano. The reason I say that is sort of common sense. He was the passenger. He doesn't have to drive. He can keep his eyes on these two individuals that they're going to stop. Now, the government would not concede that they were going to stop them, but I think the facts point that way. Did the same assistant U.S. attorney ask questions at the first and at the second hearing? Yes, Your Honor. The same U.S. attorney asked questions at both those hearings. Suppose there had been objections to the district court. Is the district court permitted to receive new evidence? I believe that the district court can, but in this case this is different. This is the government. If the district court may receive new evidence, is it governed by any of these rules that you're talking about for reopening hearings, or could the district court just receive evidence as part of de novo review on the request of either party or the court? I don't think they should be allowed to, once again, for more of the policy issues, and I haven't gone into that in depth yet. Well, I'm just wondering if the district court could do it, why can't the magistrate reopen and do the same thing? This wasn't as though the magistrate did it sui sponte. This was the government being unhappy with the report. That was my question. Suppose the government objects and says, Judge, we'd like de novo review and we'd like you to receive further evidence on the question. Is there any restriction on the judge allowing? I think there should be in the sense that unless the government is going to say that there basically was a legal issue that was unanticipated, unlike this case. This case had no unanticipated legal issues. All right, so you're saying the same standards should apply to a district court. I believe so. Is there any authority for that? Well, there is authority the other way, which is where the defense is then asked to reopen when they believe, for example, it's a case that we cited in the main part of our brief, which was an Eighth Circuit case, Chavez-Loya, that was a case involving a ruse drug checkpoint. In that case, there was no abuse of discretion in declining to reopen. In that case, right? I believe that's correct. But it was first raised to the trial court. It was first raised to the trial court level regarding a blue record. So we held it was no error by the trial court to not allow additional evidence on appeal from the magistrate. Okay, I concede the point. I understand the point. I do. I get the point. I understand that in that sense there was no abuse of discretion for the court to deny it. Well, and we also agreed there was no showing of prejudice. Well, here's the prejudice in this case. And there is specific prejudice, I think, to Mr. Hayden, and this is it. A win turned into a loss. I mean, you know, it's hard to see any other prejudice. Well, a win turned into a loss. I mean, on a very specific level, cross-examination of a witness. Assuming that win would have held up, which I think is a big assumption. Well, I think considering the facts of this case, considering the way that the officers exited the vehicle, considering the way that Kegel then basically sculpted his testimony to basically conform it, put it in line with the exact issues that Judge Mensah had, that taking that, taking the credibility issue. The cross-examination of a moderator. No, I was assuming that the R&R from the first ruling would have held up on appeal just on that record. I think that's a big assumption. Considering. With both the trial court and this court. Your Honor believes that there was no seizure when the police officers jumped out of their vehicle, the car is coming to a stop, the officer gets out simultaneously, yells, police, and shines a very powerful flashlight. That would have been my call, yeah. As a magistrate judge or a district judge, yes, just personally. Okay. And that would have been a seizure at that point? No, that it would not have. I kind of disagree, and I see obviously my time is out. Well, no, I mean, we're just talking about, although that is lurking here, that issue, but because I think, didn't the district judge ultimately say, I mean, the magistrate judge was careful to say I was right the first time, and the only reason I'm changing my ruling is because of the second evidence, but I don't think the district court went there. No, that is correct. But once again, we respectfully disagree with the district court and the magistrate. Of course. With respect to both reasonable suspicion and the seizure. I think the facts of this case with respect to the seizure are rather compelling. It's scary. It's frightening. You get jumped out on in a bad neighborhood. I understand my time is up. But if the seizure doesn't occur until the blading, then isn't there reasonable suspicion? Do you still contest reasonable suspicion? I do not at that point. If there's blading in the hands of the department, I'm not contesting that. But what I'm saying is that when he comes out, I believe Moderato was the most truthful. I agree with you that when was the seizure is critical. That is critical. That sort of blends in a lot of ways in this case. I appreciate everyone's time. Thank you. Ms. Behrens. Thank you, Your Honor. May it please the court, Mr. Vicente. My name is Allison Behrens, and I'm an assistant United States attorney here in St. Louis. And I'm here, obviously, on behalf of the government. I would like to start first, Judge Colleton, with a question that you had. You asked whether or not the district court would be, if we had filed objections to the district court, about the report and recommendation, would the district court have been able to consider additional evidence? And the answer to that is yes. And that answer is found in Title 28, United States Code, Section 636, where it states that when the district judge receives the report and recommendation of a magistrate judge, the court shall make a de novo determination. And a judge of the court may accept, reject, or modify the findings of the recommendations. And the judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. So the district court was in a position to hear additional evidence, and the district court was in a position to remand the matter, or recommit the matter, excuse me, to the magistrate judge, asking that court to consider additional evidence. And that dovetails, then, Your Honor, Judge Logan, into your question about how was the defendant prejudiced in this case. The reality is the defendant wasn't prejudiced because we had a number of options, frankly, when we received Judge Mensah's first report and recommendation. And one of the options would have been to go to the district court and present the very motion for reconsideration and motion for supplemental hearing to her. And Judge Hamilton could very easily have determined either to hold a hearing herself or remand it to Judge Mensah for additional hearing. We are urging the court to adopt a standard that will allow a district court or a magistrate court the discretion to revisit its earlier rulings when it determines that it may have been wrong. This court, in a myriad of- Well, haven't you just cited a statute that gives the court that permission? Title 28, United States Code, Section 636, Your Honor. I'm sorry, did I misunderstand your question? Well, you're asking us to adopt a rule, and I'm saying isn't there already a statute that gives the rule? Well, the statute I just mentioned? Yes. Yes, actually there is, and that's what's kind of interesting. When I was going back through rereading all of the cases again, the thing that I noticed primarily was that this case is in a very different posture from all of the cases cited by both parties in terms of those circuit courts that have set forth a standard of review in terms of motions to reopen. And that is in those cases we were dealing with final orders of the district court where the court had ruled on the suppression. So the question is could the district court reopen this, albeit interlocutory order, but final order for purposes of the discovery issues? None of the cases address the issue when you have a magistrate judge who issued a report and a recommendation, which by its very title is nothing but a recommendation. It's not an order. And I think Judge Loken, you had asked if there have been any cases which have held it inappropriate for a magistrate judge to revisit its suppression order, and I think the answer is no because I haven't found one. No, but I mean I certainly didn't find one in my search, and that's not to say it's not out there, but they certainly aren't prevalent. So we're in a completely different posture, and actually I think that Title 28 U.S.C. Section 636 allows for the very thing that happened here. This court has held, in a myriad of different circumstances, that the district court, the lower court, whether that's the magistrate court or the district court, is almost always in the best position to assess situations, dealing with credibility, dealing with continuances, dealing with a whole host of things. And I think that to have a bright-line rule that limits a standard to two specific things, as Judge Loken, you were mentioning, creates a situation where we are going to bind the hands of the court to have to stick with a ruling that may be wrong. And I don't have a case site for you because it's not binding, but there was a district court in Pennsylvania in the circuit which does have this binding rule, and that district court realized after it read the transcript that it was wrong. It had misread the testimony, but it was bound by that ruling, and that just doesn't make sense. The magistrate court here, upon receiving our motion for reconsideration, realized that I think we gave 17 separate grounds of what we believed were erroneous findings or conclusions of law. I think she believed, under the circumstances, as a relatively new judge, that perhaps she should revisit the issue. And that is consistent with an interest of justice, because what we want the judges to do essentially is to comply with what is the overarching principle in suppression issues, which is, was the evidence constitutionally obtained? And in this case, we believe it was. We believe that Judge Mensah realized that this is an issue she should revisit. She did that, and we believe it was totally within her discretion to do so. We believe also that when it comes to- I assume you'd agree that this is a sauce for the goose, sauce for the gander situation. That is, a ruling on- Absolutely. The ruling should be a two-way street. Absolutely, Your Honor, and it is not lost on me that we are actually probably advocating for a standard that favors the defendant more than the government. Because, as Mr. Vicente mentioned, the motions to suppress are denied far more than they are granted at the magistrate and district level. But I think it's a fair standard. We need to lift the district court out of the discretion to determine, in the interest of justice, what the right answer is on suppression issues so that they can reach the right conclusion as to whether the constitution was violated in these areas. I believe, with respect to when a stop occurred, I think that the stop occurred at the time that the defendant bladed and put his hand into a pocket that ultimately contained a firearm. I think that conclusion is consistent with every case out of this circuit since 1991, starting with United States against Peoples, all the way up through United States against Mayberry in 2013, last May. And even, I think, you issued again, and I'm sorry I don't have the case, even a case in December on the same facts. The fact of the matter is this court has consistently held that identifying yourself as a police officer, shining a flashlight, and approaching a defendant is not a stop. And it can't be, because then we're going to turn everything into a stop. And so we would ask the court to affirm the decision of the district court, both with respect to the suppression issue and with respect to the opening the suppression hearing. And unless the court has any additional questions for me, which of course I'm happy to answer, I would respectfully wait the remainder of my time. Okay, thank you. Thank you. Mr. Vicente, do you have some time? No, sir. I'll give you a minute. I think we understand the issues, and they've been very well both briefed and argued this morning. And we'll take it under advisement. Thank you. Does that conclude?